UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAVON DAVIS, Personal Representative of the ESTATE OF DORIAN MURRELL<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF INDIANAPOLIS, JOE HOGSETT in his individual and official capacity, INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT and CHIEF RANDALL TAYLOR in his individual and and official capacity.<br><br>Defendants. | FILED<br>MAY 24 2022<br>U.S. CLERK'S OFFICE<br>INDIANAPOLIS, INDIANA<br><br>CIVIL ACTION NO.:<br><br>1:22-cv-1072 TWP MG |

## COMPLAINT FOR DAMAGES

**COMES NOW,** the Plaintiff, Shavon Davis, mother and Personal Representative of the Estate of Dorian Murrell, pro se, and for my Complaint against the Defendants, City of Indianapolis, Joe Hogsett in his individual and official capacity, Indianapolis Metropolitan Police Department and Chief Randall Taylor in his individual and official capacity, alleges and states as follows:

### INTRODUCTORY STATEMENT

1. This is an action for damages sustained by a citizen of the United States against Joe Hogsett, the Mayor of the City of Indianapolis and Director of Public Safety charged with directly overseeing the Indianapolis Metropolitan Police Department (Marion Co. Mun. Code 201-1(b)), who by his actions and inactions failed to provide for and maintain the public safety in downtown Indianapolis, at all times relevant to this action.

2. This is an action for damages sustained by a citizen of the United States against Randall Taylor, the Chief of the Indianapolis Metropolitan Police Department, who was responsible for implementing an Incident Action Plan (hereinafter referred to as "IAP"); supervising and coordinating the department's activities; overseeing dispatch and communication; determining and implementing procedures, policies, orders, rules or regulations by which operations are to be conducted; setting work schedules and requiring employees of the department to work overtime as warranted and permitted; coordinating the activities of the various public safety agencies to work in conjunction with the director of the office of public health and safety, the chief of the fire department, sheriff or coroner of the county or and any other agency that can help with the safeguarding of citizens and property throughout the city; and temporarily appoint additional personnel on application of any person or corporation in response to any emergency, riot or insurrection as declared by the mayor, which persons the chief may remove at any time without hearing or notice or assigning any cause (Marion Co Mun. Code 279-221 (f)(1), (2), (3), (8), (12), (13)).

3. This is an action for damages sustained by a citizen of the United States against the City of Indianapolis for failing to provide training, the need of which was obvious and the inadequacy of training was likely to result in a violation of constitutional rights. The municipal entity demonstrated a deliberate indifference to the rights of the plaintiff by failing to provide such training.

4. This is an action for damages sustained by a citizen of the United States against the Indianapolis Metropolitan Police Department (hereinafter "IMPD") for failure to train it's officers in the proper procedures to implement an IAP which would help maintain order and preserve the peace.

## JURISDICTION

5. The Plaintiff hereby incorporates paragraphs 1 through four (4) of Plaintiff's Complaint as if set forth fully herein.

6. This action is brought pursuant to 42 U.S.C. §§ 1983, and the Fourteenth Amendment of the Constitution of the United States.

7. This Court has subject matter jurisdiction under 28 U.S.C.§§ 1331, 1343(a)(3), (4).

8. This Court may also exercise supplemental jurisdiction over the Plaintiff's state law claims that arise from the same set of facts and circumstances under 28 U.S.C. § 1367.

## PARTIES

9. The Plaintiff hereby incorporates paragraphs 1 through eight (8) of Plaintiff's Complaint as if set forth fully herein.

10. The Plaintiff is a resident of Indianapolis, Indiana and at all times relevant to this action was a citizen of the United states and a resident of Marion County, Indiana. At all times relevant to this action, Plaintiff, Shavon Davis, the Personal Representative of the Estate of Dorian Murrell, was the biological mother of Dorian Murrell, deceased, and a resident of Indianapolis, Marion County, Indiana.

11. At all times relevant to this action, Defendant Joe Hogsett, in his individual capacity, was the duly elected Mayor of the City of Indianapolis who:

    a. At all times relevant to this action, was acting as the Director of Public Safety charged with meeting with heads of city departments to adopt rules and regulations for the administration of the affairs of the city;

    b. Was the director of public safety responsible for overseeing the IMPD; and

    c. This Defendant is sued individually and in his official capacity.

12. At all times relevant to this action, Defendant Randall Taylor was the Chief of the IMPD. In this capacity the Chief was:

   a. responsible for implementing an IAP;

   b. supervising and coordinating the department's activities;

   c. overseeing dispatch and communication;

   d. determining and implementing procedures, policies, orders, rules or regulations by which operations are to be conducted;

   e. setting work schedules and requiring employees of the department to work overtime as warranted and permitted;

   f. coordinating the activities of the various public safety agencies to work in conjunction with the director of the office of public health and safety, the chief of the fire department, sheriff or coroner of the county or and any other agency that can help with the safeguarding of citizens and property throughout the city; and

   g. temporarily appoint additional personnel on application of any person or corporation in response to any emergency, riot or insurrection as declared by the mayor, which persons the chief may remove at any time without hearing or notice or assigning any cause.

13. The Defendant City of Indianapolis is a municipal corporation within the State of Indiana and, at all times relevant failed to provide training, the need of which was obvious and the inadequacy of training was likely to result in a violation of constitutional rights. The municipal entity demonstrated a deliberate indifference to the rights of the plaintiff by failing to provide such training.

14. The Defendant IMPD is a governmental entity within the City of Indianapolis which, at all times relevant, failed to properly train it's officers in the proper procedures to implement an IAP which would help maintain order and preserve the peace.

15. At all times relevant and in all of their actions, the Defendants were acting under

the color of statute, ordinance, regulation, custom or usage of the State of Indiana, the County of Marion and the City of Indianapolis and pursuant to their authority.

## FACTUAL ALLEGATIONS

16. The Plaintiff hereby incorporates paragraphs 1 through fifteen (15) of Plaintiff's Complaint as if set forth fully herein.

17. On May 25, 2020, George Floyd died during an arrest in Minneapolis, which sparked protests and riots throughout the entire country. Indianapolis was no exception.

18. On May 29, 2020, just four (4) days following the death of George Floyd, a relatively small group of people gathered on Monument Circle to protest what they perceived as police misconduct against people of African descent. This protest was also a continuation of protests that had begun in early May following the police shooting of Dresjean Reed.

19. The IMPD was put on notice that there would be demonstrations in the downtown area on the weekend of May 29 and members of the Emergency Response Group (ERG) were told to be prepared to respond.

20. The ERG team is supposed to have specialized training in crowd control measures. ERG members were deployed to Monument Circle in the early afternoon of May 29, 2020, when the number of marchers reached approximately fifty (50).

21. As the day wore on, the number of protesters grew and confrontations began to occur between protesters and IMPD to the point they were literally face to face with one another.

22. The ERG officers were wearing what is commonly referred to as "riot gear". The proximity of the officers to protesters, coupled with the officers attire, escalated tensions in the crowd.

23. At approximately 8:00 p.m., officers with the ERG began deploying CS gas.

At the same time, individual officers deployed pepper balls in an effort to control and disperse the crowd. While most of the crowd was not involved in criminal activity, they were not inclined to be restricted to any geographic area of Downtown Indianapolis. The use of gas on the crowd heightened tensions and caused the protesters to spread to various parts of the Downtown area.

24. By 10:00 p.m. on the night of May 29, the protest organizers called for the marchers to go home and come back the next day. Many people did leave, however those prone to violence and disruption stayed for several more hours, becoming more violent as the night wore on.

25. IMPD leadership had not anticipated the size of the crowds and were not prepared for what transpired over the weekend. The crowd size, IMPD's lack of training and preparation in dealing with peaceful First Amendment protests, as well as the fact the crowd was protesting police themselves, contributed to the mayhem and air of lawlessness that ensued over the weekend.

26. On Saturday, May 30, 2020, the protests resumed and crowds grew even larger and more violent. There were several reports of shots fired by some in the crowd.

27. IMPD had no IAP in place for the protests over the weekend of May 29 through June 1 nor was a curfew put in place.

28. Street officers were given very little if no instruction and were told merely to come downtown and maintain order. When their shift ended, members of the ERG team were permitted to go home. Other members of the Special Events Team (SET) who offered to come downtown, were told they were not needed.

29. On May 30, despite the heightened violence and lawlessness that ensued throughout the night, the IMPD Command Center was located at the Indianapolis Fire

Department located on Ft. Wayne Avenue, a building that gave no view to what was occurring and had no access to cameras around the downtown area. The Command Center was eventually moved to Shadeland Avenue however there were too many people present in the Command Center to engage in organized policing operations.

30. Efforts to disperse the crowd did not begin until law enforcement deemed the crowd to be an unlawful assembly. This determination was made when the peaceful protest became violent and perceived threats to public safety were imminent. Dispersing the crowd caused the violence to span throughout the downtown area rather than centralized at Monument Circle.

31. After dispersing the crowd, peaceful protesters and violent criminals alike, IMPD failed to follow up with of Downtown Indianapolis following the protest to discourage any additional violence.

32. On Sunday May 31, 2020, Indianapolis Metropolitan Police Department (IMPD) Officers were dispatched to the intersection of

North Pennsylvania Street and East Market Street on the report of a person shot.

33. Officers arrived and located a male, later identified as Dorian Murrell, suffering from a gunshot wound.

34. Dorian Murrell was transported to Eskenazi Hospital where he was pronounced deceased at 2:21 hours

35. The Defendants' actions and failures to act resulted in a heightened state of violence and unprotected air of lawlessness throughout the downtown area. Failing to properly disperse the violent crowd and follow up with patrols throughout the residential downtown neighborhoods, were a proximate cause of the wrongful death of Mr. Murrell.

## COUNT I VIOLATION OF THE FOURTEENTH AMENDMENT

36. The Plaintiff hereby incorporates paragraphs 1 through thirty-five (35) of Plaintiff's Complaint as if set forth fully herein.

37. The actions and omissions described above, engaged in under the color of state authority by the Defendants, deprived the Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to the Plaintiff's Fourteenth Amendment right to be free from the deprivation of life, liberty and property without the due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

## COUNT II – WRONGFUL DEATH

38. Plaintiff hereby incorporates the allegations set forth in paragraphs one through thirty-seven (37) of this Complaint as if set forth fully herein.

39. Notwithstanding the duties owed to the Plaintiff by the Defendants or their agents and employees, acting within the scope of their employment, the Defendants failed to properly plan for the scheduled protest that predictably ended in violence based upon the same protests happening nationwide.

40. Notwithstanding the duty owed to the Plaintiff by the Defendants or their agents and employees, acting within the scope of their employment, the Defendants were negligent in that they:

    a. Failed to properly patrol the scheduled protest;

    b. Failed to properly disperse the protest crowd after it was supposed to end at 9:00 p.m.;

    c. Failed to properly diffuse the resulting looting and violence that predictably occurred after the scheduled protest;

    d.    Failed to properly patrol the downtown Indianapolis neighborhoods after the scheduled protest to discourage any resulting violence;

    e.    Failed to eliminate or minimize the dangerous and hazardous condition of downtown Indianapolis after the scheduled protest;

    f.    Failed to exercise reasonable care to provide and maintain public safety in downtown Indianapolis;

    g.    Failed to follow own operating standard to preserve, protect, analyze, investigate, and recover evidence from the crime scene at North Pennsylvania Street and East Market Street in Indianapolis, Indiana;

    h.    Negligently hired, trained and authorized the negligent actions and inactions of their agents/employees including but not limited to members of the IMPD.

41.    As a direct and proximate result of the acts and omissions of negligence on the part of the Defendants, Dorian Murrell suffered fatal gunshot wounds.

42.    As a direct and proximate result of the acts and omissions of negligence on the part of the Defendants, the Plaintiff, Shavon Davis has a wrongful death claim for the loss of Dorian Murrell's loss of services, loss of love and affection, emotional support, funeral and burial expenses and incidental expenses associated with the cost of the Administration of the Estate of Dorian Murrell.

43.    That on or about October 12th, 2020, by certified mail Dorian Murrell's family filed proper notice of tort claim under the Indiana Tort Claims Act, 1C 34-4-16.5 ET.SEQ, and by Defendants' failures to respond, said claim was denied in whole, pursuant to 1C 34-4-16.5-12.

## CONCLUSION

44.    The Plaintiff hereby incorporates paragraphs 1 through 43 of Plaintiff's

Complaint as if set forth fully herein.

45. As a result of the carelessness and negligence of the Defendants, Dorian Murrell suffered fatal gunshot wounds and was deprived of his Fourteenth Amendment right to be free from the deprivation of life.

**WHEREFORE, the** Plaintiff, Shavon Davis as Personal Representative of the Estate of Dorian Murrell, pro se, demands judgment against the Defendants:

(A) That the Plaintiff be awarded general and compensatory damages, for the loss of Dorian Murrell, Murrell's loss of services, loss of love and affection, emotional support, funeral and burial expenses, and incidental expenses associated with the cost of the administration of the Estate of Dorian Murrell.

(B) That the Plaintiff be awarded reasonable attorney's fees and costs of suit; and

(C) That the Plaintiff be awarded such other and further relief as the Court deems just and proper in the premises.

Respectfully submitted,

By: /s/Shavon Davis
Shavon Davis
4823 Thrush Drive
Indianapolis, IN 46224
317-373-3248

## DEMAND FOR JURY TRIAL

Comes now plaintiff, Shavon Davis, Personal Representative of the Estate of Dorian Murrell, pro se, and respectfully requests a jury trial on all issues so triable.

Respectfully submitted,

By: /s/Shavon Davis
Shavon Davis

## CERTIFICATE OF SERVICE

Comes now Plaintiff, Shavon Davis and submits under penalty of perjury that a copy of the foregoing has by certified mail been sent on file date above to:

Indianapolis Corporate Counsel
City County Building
200 East Washington Street
Suite 1601
Indianapolis, IN 46202

Case 1:22-cv-01072-TWP-MG   Document 1   Filed 05/24/22   Page 12 of 12 PageID #: 12