UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAVON DAVIS Personal Representative of the Estate of Dorian Murrell,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF INDIANAPOLIS,<br>JOE HOGSETT,<br>INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT,<br>RANDALL TAYLOR Chief,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:22-cv-01072-TWP-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants, City of Indianapolis (the "City"); Joe Hogsett, in his individual and official capacity as Mayor of the City; Indianapolis Metropolitan Police Department ("IMPD"); and Randall Taylor, in his individual and official capacity as the Chief of the IMPD (collectively, the "Defendants") (Filing No. 15). Plaintiff Shavon Davis ("Ms. Davis"), as the mother and purported Personal Representative of the Estate of Dorian Murrell ("Mr. Murrell"), initiated this action under Indiana's wrongful death statute, Indiana Code § 34–23–1–1, and the Civil Rights Act, 42 U.S.C. § 1983, alleging the Defendants violated the due process clause of the Fourteenth Amendment to the United States Constitution (Filing No. 1). For the reasons stated below, the Court **grants** the Defendants' Motion to Dismiss.

## I.     ACTUAL BACKGROUND[1]

Because the Defendants moved for dismissal under Rules 12(b)(1) and 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A. The Summer of 2020

Like many major American cities, Indianapolis, Indiana was embroiled in disruptive protests during the weekend of May 29–31, 2020, in the wake of the murder of George Floyd by a police officer, as well as the local police action shooting of a young Black man. On May 29, 2020, a small group of protestors gathered in downtown Indianapolis, initially congregating near Monument Circle to protest what they perceived as police misconduct against people of color (Filing No. 1 at ¶ 18). In response, IMPD deployed its Emergency Response Group to the downtown area to handle crowd control. *Id*. at ¶¶ 19–20. Some officers were wearing riot gear. *Id*. at ¶ 22. Later that day, as tension grew between protestors and IMPD, CS gas and pepper balls were deployed to diffuse the situation and disperse the crowd. *Id*. at ¶¶ 21–23.

### B. The May 31, 2020 Incident

The next day, May 30, 2020, protests continued in the downtown area but were punctuated by increased violence and disorder during the evening and overnight hours. *Id*. at ¶¶ 26. IMPD would again have to disperse the crowd, which caused the violence to spread throughout the downtown area rather than be centralized at Monument Circle. *Id*. at ¶ 30. Mr. Murrell was a

---

[1] The facts alleged in Ms. Davis' Complaint appear to be a verbatim recitation of the facts alleged in another case recently resolved by this Court, *Cooper v. City of Indianapolis*, No. 22-cv-00917, 2023 WL 1798740 (S.D. Ind. Feb. 7, 2023), except that the names of the plaintiff and the decedent and the exact location and circumstances of the decedent's death have been changed (Filing No. 1 at ¶¶ 32–34). In both cases, the plaintiffs' sons were shot and killed by third parties within blocks and hours of one another in apparently unrelated incidents. The Court does not note the similarity between the two complaints to doubt the veracity of Ms. Davis' allegations or to doubt the fact that two mothers could have tragically lost their sons in remarkably similar circumstances. The Court notes the similarity only to explain why the Court's decision in this case is similar to its decision on the motion to dismiss in *Cooper*.

resident of Indianapolis, Marion County, Indiana. *Id*. at 11. In the early morning hours of Sunday, May 31, 2020, IMPD officers received a report that a person had been shot at the intersection of North Pennsylvania Street and East Market Street. When officers arrived, they found Mr. Murrell suffering from a gunshot wound. Mr. Murrell was transported to the hospital. Tragically, at 2:21 a.m., Mr. Murrell died of the gunshot wounds he sustained that day. *Id*. at ¶¶ 32-34.

On May 24, 2022, Ms. Davis filed a two-count Complaint against the Defendants in this Court alleging a state law wrongful death claim and a due process claim. The Complaint alleges

> The Defendants' actions and failures to act resulted in a heightened state of violence and unprotected air of lawlessness throughout the downtown area. Failing to properly disperse the violent crowd and follow up with patrols throughout the residential downtown neighborhoods, were a proximate cause of the wrongful death of Mr. Murrell.

*Id*. at ¶ 35. Count One alleges the Defendants' acts or omissions violated Mr. Murrell's Fourteenth Amendment rights, and Count Two is a state law wrongful death claim. *Id*. at ¶¶ 36–44.

## II.     LEGAL STANDARDS

### A.     Standard for Dismissal under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual

allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B.      Standard for Dismissal under Rule 12(b)(6)**

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

### III.     DISCUSSION

Ms. Davis alleges her son's death was the result of the Defendants' actions and inactions during a period of civil unrest in downtown Indianapolis (Filing No. 1). The Defendants argue dismissal of the state law claim is appropriate under Federal Rule of Civil Procedure 12(b)(1) because Ms. Davis lacks standing as she is not the personal representative of Mr. Murrell's estate;

and under Rule 12(b)(6) because the state law claim is barred by the Indiana Tort Claims Act. The Defendants also argue dismissal of Ms. Davis's federal § 1983 claim is appropriate under Rule 12(b)(6) because she has not alleged a "state-created danger," has not alleged an equal protection violation, and such a claim is now time-barred. The Court will first address the 12(b)(1) claim before turning to the dispositive 12(b)(6) claim.

### A.  Dismissal of the Wrongful Death Claim

Defendants assert they are entitled to dismissal under Rule 12(b)(1), because the Complaint neither asserts that an estate was opened on behalf of Mr. Murrell, nor that a court appointed Plaintiff as the personal representative of Mr. Murrell's estate. Defendants argue that Ms. Davis is unable to bring a wrongful death claim under the Indiana Wrongful Death Act ("IWDA"), because in Indiana, personal representatives of decedent's estates are appointed by the probate court, and their public search reveals no estate has been opened. *See, e.g.*, Ind. Code § 29-1-7-4. Defendants argue that even if Ms. Davis were to open an estate for Mr. Murrell now, any claim she could assert as his personal representative would be untimely since Mr. Murrell died on May 31, 2020 and she cannot satisfy the two-year time period within which to bring a claim under the IWDA.

Ms. Davis responds that under Indiana law, when a parent is seeking compensation for the loss of a child under the age of 20, no estate is required. I.C. 34-23-2. This statute provides that the mother may maintain an action for a child less than twenty years of age. I.C. 34-23-2-1 (b) (c). Because Mr. Murrell was 18 years old at the time of his death, Ms. Davis contends no estate was required to be open. As to the contention that her two-year time period has expired, Ms. Davis argues that "…the law could not be more straightforward: courts look to the state personal injury statute of limitations and its attendant tolling provisions." *Ray v Maher* 662 F.3d 770, 774 (7th Cir. 2011). Ms. Davis concludes that since no estate was required, or even permitted, to be opened

for Mr. Murrell under the controlling Indiana statute, Defendants' Motion to Dismiss on this basis should be denied. (Filing No. 20 at 2.)

At this stage of the proceedings the Court takes Ms. Davis' allegation that she is the personal representative of her teenage son's estate and able to maintain an action for Mr. Murrell as true. In addition, the Court does not find that Ms. Davis would be unable to amend her Complaint to allege the required elements to bring a wrongful death action on behalf of her child. Accordingly, the Court does not find that dismissal pursuant to Rule 12(b)(1) is appropriate.

Because the Defendants' argument as to the alleged creation of a "state created danger" is dispositive of Ms. Davis federal claim, the Court will move on to that argument.

**B.      Whether the Due Process Claim is Viable**

Count I of Ms. Davis' Complaint alleges a violation of Mr. Murrell's due process rights in violation of § 1983 against all Defendants[2] (Filing No. 1). Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266 (1994). Under § 1983, Ms. Davis must allege: (1) a deprivation of a right guaranteed by the Constitution or laws of the United States, and (2) that a person acting under the color of state law caused the deprivation. *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 2. "[N]othing in the language of the Due Process Clause . . . requires the state to protect

---

[2] Suits may be brought against individual officers in either their official or individual capacity or both. Here, Ms. Davis sues Mayor Joe Hogsett and Chief of Police Randal Taylor in both their individual and official capacities. The distinction is telling because where a suit is brought against an individual in his official capacity, it is really a claim against the municipality, *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997), and thus, Ms. Davis' claims against Joe Hogsett and Randal Taylor in their official capacities is another way of making a claim against the City. Although Ms. Davis has not argued municipal liability under *Monell*, the claim against the City would have faltered on the absence of an "underlying constitutional violation" by the Defendants, which "automatically preclude[s] a finding of Monell liability." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 463 (7th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)).

the life, liberty, and property of its citizens" against invasion by third parties. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Courts, however, have read *DeShaney* as carving out two exceptions to this general principle. Under *DeShaney*, the government may be liable for private violence: (1) if the government is responsible for creating the danger (the "state created danger exception"); or (2) if someone in government custody is unable to protect himself. 489 U.S. 189, 195 (1989).

The Complaint does not allege that Mr. Murrell was ever in government custody, so only the state-created danger exception could apply. Under this exception the government violates an individual's due process rights when "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question 'shocks the conscience.'" *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019).

### 1. Created or Increased Danger

Ms. Davis does not allege that the person who shot and killed Mr. Murrell was acting under color of law, in her reply, she does not dispute that the person was a private citizen. The Court therefore must first determine whether IMPD created or increased the danger to Mr. Murrell.

To adequately plead a state created danger claim, Ms. Davis must allege the government's affirmative acts placed Mr. Murrell in danger or increased the danger Mr. Murrell already faced. *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 599–600 (7th Cir. 2008). Regardless of whether the act is characterized as an affirmative act or an omission, the dispositive factor is whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable. *Doe v. City of Marion*, 196 F. Supp. 2d 750, 757 (N.D. Ind. 2002). Mere inaction by state officials, even in the face of a known threat, is insufficient. *DeShaney*, 489 U.S. at 203; *Windle v. City of Marion*, 321 F.3d 658, 661–62 (7th Cir. 2003); *Doe*, 196 F. Supp. 2d at 756–57.

The Seventh Circuit has stressed that liability under the state created danger exception has only been found under "rare and often egregious" circumstances. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). Some examples include police officers arresting children's uncle and leaving the children on the side of a dangerous highway late at night, *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979); police officers arresting a sober driver while leaving behind an obviously drunk passenger who subsequently took the wheel and was involved in a collision, *Reed v. Gardner*, 986 F.2d 1122, 1124 (7th Cir. 1993); or officers revealing a police informant's identity to a criminal suspect who then went on to kill the informant, *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998).

Here, Ms. Davis has failed to state a claim that the Defendants created or increased a danger to Mr. Murrell. In terms of any alleged "affirmative act," Ms. Davis' allegations are that IMPD mishandled its response to the protests and failed to "follow up with patrols around the residential neighborhoods of downtown Indianapolis following the protest to discourage any additional violence," and that Mr. Murrell was shot while he was downtown (Filing No. 1 at ¶¶18–23, 27–35, 40).

These allegations do not allege any affirmative act by the Defendants. As argued by the Defendants, Ms. Davis does not allege that any Defendant, or any employee of the City or IMPD, was present at the scene of this act of violence against Mr. Murrell, had any foreknowledge of this specific crime, had any previous interactions with the shooter, or otherwise had any direct involvement in the incident whatsoever (Filing No. 16 at 17–18). Moreover, Ms. Davis does not allege that Mr. Murrell or the shooter was present at the protest or that IMPD advised the shooter of Mr. Murrell's location. The Complaint is devoid of facts that any Defendant acted to create or enhance a danger Mr. Murrell otherwise would not have faced. Unfortunately, the danger for Mr. Murrell was created by Mr. Murrell and the third-party shooter and not by the Defendants.

Accordingly, the Court concludes that Ms. Davis has not alleged sufficient facts to support a finding that the Defendants, through any acts or omissions, created or increased the danger to Mr. Murrell.

### 2. Proximate Cause

Even if Ms. Davis' Complaint had sufficiently alleged any affirmative acts or omissions that created or increased the danger to Mr. Murrell, the Complaint must also allege facts suggesting that the Defendants' conduct was the proximate cause of Mr. Murrell's death; that is, Mr. Murrell "must have been a foreseeable victim" of the Defendants' acts. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009). Ms. Davis' Complaint alleges Mr. Murrell was killed within a few blocks of Monument Circle; that the danger and violence due to rioting had been occurring downtown on the nights of May 29 and 30, 2020; and that the Defendants had not changed their course of action from one day to the next (Filing No. 1 at ¶¶ 21–29).

In *Buchanan-Moore*, the Seventh Circuit affirmed the district court's holding that the decedent was not a foreseeable victim of a mentally ill man who shot and killed the decedent shortly after being released from jail. *Id*. at 826-28. There the court recognized that proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." *Id*. at 829. The court found that the decedent's risk was "shared by the thousands of others who lived in that section of town as well as those living in any community accessible to [the man] by foot, and perhaps even by public transit." *Id*. Such a generalized, "amorphous zone of danger is insufficient to trigger a state duty to protect." *Id*.; *see also Martinez v. State of California*, 444 U.S. 277, 285 (1980) ("Dangers to the public at large are insufficient for constitutional purposes."). Similarly, the danger was not of a limited duration—the offender's propensity for crime "existed without temporal boundaries." *Id.* at 829.

9

Here, the Complaint fails to allege any link between the Defendants' alleged missteps and Mr. Murrell's death. Apart from the crime occurring in the same region of the City and around the time the protests ended, there is no factual allegation that supports a finding that the protests and Mr. Murrell's murder are connected—let alone that the crime was somehow caused by the Defendants. As addressed above, there are no allegations that Mr. Murrell or the shooter was present at the protests, that the shooter's actions were motivated by or prompted by the Defendants, or that either the shooter or Mr. Murrell had any contact with IMPD or the other Defendants. The danger was unspecific to Mr. Murrell and, as the facts clearly illustrate, the danger was shared by all in the vicinity of downtown Indianapolis. It is more foreseeable that someone could have been hurt at the protests than predicting the events that led to Mr. Murrell's death. The alleged risk is more akin to the "indefinite" risk articulated in *Buchanan-Moore*, and, as pled, the unfortunate events appear more "unpredictable rather than legally foreseeable." *Id.* at 828. The Court therefore concludes that Ms. Davis has not sufficiently alleged that the Defendants' actions or inactions were the proximate cause of Mr. Murrell's death.

### 3. <u>Shock the Conscience</u>

Finally, to be held liable under the state created danger exception, the government's actions must shock the conscience. The United States Supreme Court has held that state action that shocks the conscience is conduct which may be deemed "arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Only "the most egregious official conduct" will satisfy this stringent inquiry. *Id*. "Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011) (quoting *Cnty. of Sacramento*, 523 U.S. at 846). Rather, "[i]t requires a culpable state of mind equivalent

to deliberate indifference." *Estate of Her*, 939 F.3d at 876 (citing *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007)).

Ms. Davis' Complaint describes an excessive and unprepared response by IMPD to the protests. According to the Complaint, IMPD officers arrived to what was meant to be a peaceful demonstration clad in riot gear, standing face to face with protesters. IMPD was given little to no training or instruction on how to handle the protests and, as a result, deployed CS gas and pepper balls into the crowd. There was no Incident Action Plan in place and no curfew ordered for the weekend, and IMPD did not establish a command center on site to oversee the actions and inactions of its officers or the crowd (Filing No. 1 at ¶¶ 21–29).

The Defendants argue that the Complaint is devoid of any allegations that the Defendants knew of a serious risk to Mr. Murrell, or any other persons, or that the Defendants failed to avert any such serious risk. The Defendants argue the Complaint instead focuses on alleged negligent training and preparation, which falls short of the level of culpability required to "shock the conscience" (Filing No. 16 at 25); *see Jackson*, 653 F.3d at 654–55 ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."); *Estate of Her*, 939 F.3d at 877 ("[G]overnmental defendants must act with a *mens rea* akin to criminal recklessness for constitutional liability to attach."). The Court agrees. Here, the alleged actions or inactions by the Defendants do not amount to the level of culpability required under the state created danger exception. Construing the allegations in the Complaint in the light most favorable to Ms. Davis, it demonstrates nothing more than mere negligence. The fact that IMPD could have done more does not mean that it acted with deliberate indifference. *See Slade v. Bd. of Sch. Dirs.*, 702 F.3d 1027, 1029 (7th Cir. 2012). While IMPD could have better prepared for the protests or patrolled the surrounding areas after the protests, "actions . . . [that are] short-sighted, flawed, negligent, and tortious . . . do not satisfy

the standard for finding a constitutional violation." *Jackson*, 653 F.3d at 656 (citing *Cnty. of Sacramento*, 523 U.S. at 848). A standard of deliberate indifference cannot mean that the government has a duty to prevent all constitutional injuries in practice.

The Complaint fails as a matter of law because its allegations do not describe conscience-shocking misconduct by any of the Defendants. It is difficult to ignore Mr. Murrell's tragic death and the Court feels great empathy for Ms. Davis, but the Constitution does not guarantee Mr. Murrell's safety from criminals. Absent some affirmative act by IMPD, Ms. Davis has no recourse under the Constitution, and the Court **dismisses** Count I—the § 1983 claim. Because Count I is dismissed for failure to sufficiently allege a state created danger, the Court need not and does not reach the Defendants' additional argument that the claim is time-barred.

**C.     The State Law Claim**

As for Ms. Davis' state law claim, Count II, against the Defendants, "[i]t is the well-established law of [the Seventh] circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Given Ms. Davis' timely federal suit, the statutes of limitations applicable to her state law claim should pose no obstacle to her refiling in state court. *See* 28 U.S.C. § 1367(d). The applicable statutes of limitations were tolled while the claim was pending in federal court and for at least thirty (30) days after dismissal. *Leggette v. Dr Pepper/Seven Up, Inc.*, 2022 WL 6750261, *1 (N.D. Ill. Oct. 11, 2022) (citing *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018)). Consequently, Count II of the Complaint is **dismissed without prejudice.**

## IV. CONCLUSION

For the reasons explained above, the Defendants' Motion to Dismiss (Filing No. 15) is **GRANTED**.[3] Count I is **dismissed with prejudice**, and the state law claim, Count II, is **dismissed without prejudice** and Ms. Davis may attempt to pursue her wrongful death claim in state court. A final judgment will enter in a separate entry.

**SO ORDERED**.

Date: 2/13/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Shavon Davis
4823 Thrush Drive
Indianapolis, Indiana  46224

Brandon E. Beeler
OFFICE OF CORPORATION COUNSEL
brandon.beeler@indy.gov

John P. Daly, Jr.
GOLITKO & DALY, P.C.
john@golitkodaly.com

---

[3] "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend his complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015)). However, the Court need not grant leave to amend if "'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Id.* at 347 (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "An amendment is futile if the amended complaint would not survive a motion for summary judgment." *King ex rel. King v. E. St. Louis Sch. Dist.* 189, 496 F.3d 812, 819 (7th Cir. 2007).